**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

GARY SCHWEBACH,

        Plaintiff,

vs.

UNITED DAIRY WORKERS OF
LEMARS and WELLS DAIRY, INC.,

        Defendants.

No. C 07-4090-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANT
WELLS DAIRY, INC.'S MOTION
FOR SUMMARY JUDGMENT**

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.  Undisputed Factual Background* . . . . . . . . . . . . . . . . . . . . . . 4

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    *A.  Standards for Summary Judgment* . . . . . . . . . . . . . . . . . . . . 10
    *B.  Exhaustion of Contractual Grievance Remedies* . . . . . . . . . . . . . . . . 14
        *1.  Arguments of the Parties* . . . . . . . . . . . . . . . . . . . . . . 14
            *a.  The Employer's Initial Arguments* . . . . . . . . . . . . . 14
            *b.  The Union's Response* . . . . . . . . . . . . . . . . . . . . . . 15
            *c.  The Employer's Reply to the Union's Response* . . . . . 15
            *d.  Schwebach's Response* . . . . . . . . . . . . . . . . . . . . . . 15
            *e.  The Employer's Reply to Schwebach's Response* . . . . 17
        *2.  Analysis of the Exhaustion Requirement* . . . . . . . . . . . . . . 18

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Aunion employee is terminated for allegedly engaging in insubordination, harassment and unsatisfactory work performance. Without requesting that his union pursue a grievance[1] concerning the termination, the union considers whether to pursue a grievance on his behalf. The union ultimately decides not to pursue the grievance and informs the employee of this decision. The employee brings an action in federal court under the National Labor Relations Act, 29 U.S.C. § 185, suing both the union, for breaching its duty of fair representation in refusing to file his grievance, and the employer, for breaching its labor contract by terminating him. The employer now asks to be dismissed from the suit with a motion for summary judgment. The employer claims that the employee did not exhaust his contractual remedies under the CBA. The employer's claim, however, is based solely on the employee's failure to provide the union with a write up of his complaint, on an approved form, as required by the CBA—even though the union had pursued the employee's complaint as if a write up had been filed. The employee and the union resist the employer's motion. The court must now decide whether the employee's failure to file a write up of the complaint with the union, on an approved form, should allow the employer to be dismissed from the case.

## I. INTRODUCTION

### A. Procedural Background

On October 15, 2007, plaintiff Gary Schwebach filed a complaint in this court naming United Dairy Workers of LeMars a/k/a Wells' Dairy Employee Committee and

---

[1] The court uses the terms "grievance" and "complaint" synonymously. The parties' CBA references employee "complaints," *see* Doc. No. 15-4, p. 29, while case law often refers to "grievances" or the "grievance procedure." *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965).

a/k/a Employee Committee of LeMars and Omaha (the Union) and Wells Dairy, Inc. (the Employer) as defendants. Doc. No. 2. Schwebach alleges two counts against the defendants, both of which are brought under § 301 of the National Labor Relations Act, 29 U.S.C. § 185. In Count I of his complaint, Schwebach alleges that the defendant Union breached its duty of fair representation by refusing and failing to pursue a grievance contesting Schwebach's termination. In Count II, Schwebach alleges that the Employer breached its labor contract with the Union by terminating him without just cause. Schwebach's claims are considered a "hybrid action."[2] Schwebach asks for damages for his lost wages and employment benefits to date and in the future, compensatory damages, and other equitable relief as the court finds appropriate, from both defendants.

On November 12, 2007, the Union filed an answer, which asserts three affirmative defenses. Doc. No. 6. First, the Union claims that Schwebach failed to exhaust his administrative remedies because he did not file a written grievance as required by his labor agreement. Second, the Union claims that it followed the contract when it did not file a

---

[2] A "hybrid" action refers to an action brought under the following circumstances:
> Although the contractual remedies under a collective bargaining agreement between the employer and union ordinarily are exclusive, if the union has sole power under the contract to utilize the higher stages of a grievance procedure and wrongfully refuses to process a grievance, the employee may bring a hybrid action under Section 301 (of the National Labor Relations Act, 29 U.S.C. § 185(a)). In order to prevail against either the employer or union (in a hybrid action), the employee must prove both that the union breached its duty of fair representation and that the employer breached the collective bargaining agreement.

*Scott v. United Auto.*, 242 F.3d 837, 839 (8th Cir. 2001)(citing *Vaca v. Sipes*, 386 U.S. 171, 184-187 (1967)).

grievance because it found that Schwebach's claim of wrongful discharge lacked merit. Third, the Union claims that Schwebach has failed to state a claim upon which relief can be granted. On December 13, 2007, the Employer filed an answer. Doc. No. 9.

The Employer filed its Motion for Summary Judgment and Request for Oral Argument[3] on October 15, 2008, which is how this issue comes before the court. As grounds for its motion for summary judgment, the Employer alleges that Schwebach has failed to exhaust his contractual remedies under Article 16 of the parties' collective bargaining agreement (CBA) by failing to file a write up of his complaint, on an approved form. The Union filed a resistance to the Employer's motion (Doc. No. 17), and the Employer filed a reply. Doc. No. 18. Schwebach also filed a resistance to the Employer's motion (Doc. No. 19), and the Employer filed a separate corresponding reply. Doc. No. 21.

### B. Undisputed Factual Background

The Employer, the Union, and Schwebach have each filed a statement of facts for this motion, which reveal that the following facts are undisputed. Schwebach was employed as a production worker with the Employer from January 28, 1990, until his discharge on April 20, 2007. From October 13, 2005 through April 20, 2007, the production, maintenance, and other hourly employees of the Employer, including Schwebach, were represented by the Union, and certain terms and conditions of

---

[3] The Employer properly requested oral argument pursuant to local rules, but the court has decided to rule on the Employer's motion without hearing argument. *See* N.D. Ia. L.R. 7(c). In deciding whether to grant oral argument for this motion, the court considered the impending trial date of January 26, 2009, the court's schedule, and the need for oral argument on this particular issue.

employment of the production and maintenance employees were set forth in a CBA between the Employer and the Union.

Not only was Schwebach covered by the CBA, but from October 13, 2005 through February or March of 2006, Schwebach was an officer of the Union—the Vice President/Treasurer for the North Ice Cream Plant. As an officer, Schwebach was a signatory to the CBA and was involved in the negotiation of the CBA, and the dispute resolution procedure in particular.

Among other things, the CBA provides for a dispute resolution procedure—leading to binding arbitration—for the resolution of any and all disputes arising under the CBA, including those involving termination of employment. Specifically, the CBA puts forth a dispute resolution procedure for the initiation of a complaint by the complaining employee:

> **Article 16 – Dispute Resolution Procedure**
> A complaint is a dispute concerning the Agreement that is brought by an employee, the [Union] or the [Employer].
>
> A. When employees have complaints, an earnest effort shall be made to settle them through discussions with their Supervisor....
>
> **Unresolved Complaint**
> If a complaint is not settled by the immediate supervisor's verbal response, the complaining employee may ask the [Union] to process the complaint as a formal dispute under Step 1 of this Article 16. Employees who wish to appeal their complaints must provide the [Union] Vice President assigned to the employee's plant or department with a write up of the complaint, on an approved form, within (5) working days after their receipt of a verbal answer. This written dispute becomes property of the [Union].

Doc. No. 15-4, p. 29. Once the employee submits a written grievance, the Union has complete discretion as to whether it will proceed further with the grievance. Although not contained in Article 16, the parties assert that once the Union receives a written grievance, it will investigate the grievance to determine whether to move forward with it. The Union makes the decision to move forward based on a vote.

While not directly related to Schwebach's termination, the parties have provided information concerning Schwebach's experience with Article 16's grievance procedure. First, on or about March 13, 2006, Schwebach submitted a written complaint to the Union initiating a formal dispute for a five-day suspension he received for violating a safety rule. Second, on or about April 27, 2006, Schwebach submitted a written complaint to initiate a formal dispute concerning the Employer's demand that he bid for another job. Third, in March and April of 2007, Schwebach was involved in a dispute concerning a plant-wide safety rule concerning the use of "bump caps" being implemented by the plant manager of the North Ice Cream Plant (NICP). His involvement included the following exchange of emails with Lyle Loutsch (NICP Plant Manager, management), Joel Epling (Union Vice President of the NICP), Gregg Junck (Business Team Manager, management), Tiffany Millikan (Senior Organizational Capabilities (OC) Generalist, management), Dustin Rath (management), and Alfredo Moreno (OC Generalist, management):

> **From:** Gary Schwebach
> **Sent:** Saturday, March 31, 2007 3:11 A.M.
> **To:** Lyle Loutsch; Joel Epling; Gregg Junck
> **Subject:** Grievance for bump caps
>
> I a.m. starting the first part of the grievance procedure for the NICP employees to being forced to wear bump caps. I found out yesterday that the SICP has decided not to force

their employees to wear one. We all are under one contract so the rules should apply equally. The caps are uncomfortable, hot, and if tested would have a bacteria problem, which goes into a hygiene problem.

I would also like address why we are not allowed to put a petition in the break room which we have done for years, past practice applies in this case. Why were employees threatened with their jobs when not agreeing with the bump hats and getting a petition signed and the supervisors taking it upon themselves to tear it up?

**From:** Gary Schwebach
**Sent:** Saturday, March 31, 2007 5:16 P.M.
**To:** Gary Schwebach; Lyle Loutsch; Joel Epling; Gregg Junck
**Cc:** Tiffany Millikan
**Subject:** RE: Grievance for bump caps

Lyle I understood you talked to Joel about the petition in the break room and got that worked out, great. The first round of a grievance is for the person with the grievance and the person in that has the grievance against him try to work it out. Joel is not supposed to be involved until it goes to a formal written grievance. Just an FYI. Thanks.

**From:** Gary Schwebach
**Sent:** Saturday, April 07, 2007 2:31 P.M.
**To:** Gary Schwebach; Lyle Loutsch; Joel Epling; Gregg Junck; Dustin Rath
**Cc:** Tiffany Millikan
**Subject:** RE: Grievance for bump caps

Since the employees are not allowed to file after the set time is up what is the penalty for management not living up to their time frame. I had a meeting on Tuesday and it says 2

days. It is now Saturday afternoon and I still haven't heard a
response.

**From:** Tiffany Millikan
**Sent:** Monday, April 09, 2007 9:10 A.M.
**To:** Gary Schwebach; Lyle Loutsch; Joel Epling; Gregg
Junck; Dustin Rath
**Cc:** Alfredo Moreno
**Subject:** RE: Grievance for bump caps

Joel,
You have the written response (which is not an obligation
outlined by contract by management) to those few issues that
were not verbally addressed at the meeting w/Gary. Please
ensure he gets them.

**From:** Gary Schwebach
**Sent:** Monday, April 09, 2007 7:49 P.M.
**To:** Tiffany Millikan; Lyle Loutsch; Joel Epling; Gregg
Junck; Dustin Rath
**Cc:** Alfredo Moreno
**Subject:** RE: Grievance for bump caps

I would have to correct Miss Miliken it says in the first
round of the dispute resolution "The immediate supervisor
shall provide the employee and the [Union] representative (if
one was present at the meeting) with a verbal response to the
complaint within (2) working days after receiving the
complaint." I told Dustin and Rob the could get back to me
with their answers. They told me they would prefer to write
one. I finally got a copy from Alfredo today. Thank you.

Doc. No. 15-4, pp. 88-89, 92, 93-94.

The parties explain the circumstances surrounding Schwebach's termination, at
issue in this case, beginning on April 17, 2007. Schwebach was suspended that day
following a meeting with Mr. Loutsch, Mr. Moreno, and Kelli Thompkins, a Business

8

Team Manager (management). Three days later, on April 20, 2007, Christine Comstock, Organization Capabilities Manager (management), called Neal Kruckenberg, President of the Union, informing him that Schwebach was probably going to be terminated.[4] Moreno and Comstock then contacted Schwebach by telephone, that same day, and informed him that he was terminated.

Sometime after Schwebach learned of his termination, he called Kruckenberg to inform him of his discharge. During the conversation, Schwebach indicated that he wanted to speak with Steve Augustine, the Union's Secretary. Augustine called Schwebach on April 24, 2007, and Schwebach informed Augustine that he had been terminated and provided him with details and names to begin an investigation. Prior to the conversation with Kruckenburg and Augustine, an investigation had not begun. On April 27, 2007, Augustine met with Junck to discuss Schwebach's termination. At the Union's next monthly meeting, held on May 1, 2007, the Union's officers met, without Schwebach present, and voted not to pursue a complaint on his behalf. Augustine called Schwebach on May 9, 2007 to inform him of the Union's officers' meeting and decision not to pursue his complaint to the Fairness Committee.[5]

When Schwebach was informed by Augustine that the Union was not pursuing his grievance any further, Schwebach was also told that there was nothing further that he could do to pursue his grievance. It is also undisputed that there was no alternative method, under the Union's bylaws, by which Schwebach could have appealed the

---

[4] Schwebach denies this fact based on lack of information.

[5] According to Article 16, Step 2, the Union would first need to consider an employee complaint to be a "formal dispute" in order to be taken to the Fairness Committee. *See* Doc. No. 15-4, pp. 29-30.

decision by the officers. Schwebach did not, at any time, file or submit a written complaint or grievance in connection with his termination.

## II.  LEGAL ANALYSIS

### A.  Standards for Summary Judgment

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Any party may move for summary judgment regarding "all or any part" of the claims asserted in a case. FED R. CIV. P. 56(a), (b) (allowing a claimant to move for summary judgment "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party," and allowing a defending party to move for summary judgment "at any time"). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." *Id.* 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive

law will identify which facts are material." *Anderson*, 477 U.S. at 248. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.* An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence"). Evidence presented by the nonmoving party that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, such as a "scintilla of evidence," *Anderson*, 477 U.S. at 252; *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997), or evidence that is "merely colorable" or "not significantly probative," *Anderson* at 249-50, does not make an issue of material fact genuine.

Thus, a *genuine issue of material fact* is not the "mere existence of some alleged factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence*, 358 F.3d 982, 985 (8th Cir. 2004). "'Instead, "the dispute must be outcome determinative under prevailing law."'" *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) (quoting *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992), in turn quoting *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989)). In other words, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. Essentially, a genuine issue of material fact determination, and thus the availability of summary judgment, is a

11

determination of "whether a proper jury question [is] presented." *Id.* at 249. A proper jury question is present if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

Procedurally, the moving party does not have to "support its motion with affidavits or other similar materials *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, but the moving party does bear "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Thus, a movant need only demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). Thus, the movant must show the absence of a genuine issue of material fact as it relates to the substantive law, and the nonmovant must show the alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a

matter of law." *Celotex*, 477 U.S. at 322; *In re Temporomandibular Joint*, 113 F.3d at 1492.

In considering whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita*, 475 U.S. at 587-88. However, "because we view the facts in the light most favorable to the non-moving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather than "attempt[ing] to determine the truth of the matter . . . the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

Of course, the facts are not the sole concern of the court; after all, a genuine issue of material fact necessarily depends on the substantive law. *See Holloway*, 884 F.2d at 366 ("The presence of a genuine issue of fact is predicated on the existence of a legal theory which can be considered viable under the nonmoving party's version of the facts. The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."). Thus, the relevant law concerning plaintiff's claims is pivotal. *Anderson*, 477 U.S. at 252 ("[T]he inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."); *see Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998) ("'In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law.'" (quoting *Hartnagel*, 953 F.2d at 396)). Even if no genuine issue of material fact is

present, summary judgment is not appropriate unless the governing law supports the moving party's position. FED. R. CIV. P. 56(c) (requiring the moving party to show that it "is entitled to judgment as a matter of law"). Moreover, summary judgment is particularly appropriate "where the unresolved issues are primarily legal rather than factual." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996).

## B. Exhaustion of Contractual Grievance Remedies

### 1. Arguments of the Parties

#### a. The Employer's Initial Arguments

In its motion, the Employer claims that Schwebach, having brought an action under 29 U.S.C. § 185(a), must establish that he exhausted his grievance remedies under the CBA. The Employer argues Schwebach failed to exhaust his contractual remedies because he did not file a write up of his complaint with the Union, concerning his termination, as required by Article 16 of the CBA. The Employer stresses, in arguing that he knew Article 16's procedures, that Schwebach has successfully fulfilled the procedures on multiple occasions.[6] The Employer claims that there are no genuine issues of material fact in dispute concerning whether Schwebach fulfilled the CBA's grievance procedures and asks to be dismissed from the suit due to Schwebach's alleged failure to exhaust his contractual remedies.

---

[6] As stated in the undisputed factual background section, Schwebach submitted written complaints to the Union on March 13, 2006, concerning a five-day suspension imposed against Schwebach and on April 27, 2006, for a dispute regarding whether he needed to bid for a job. The parties also put forth undisputed evidence of emails where Schwebach communicated about the grievance procedures under the CBA.

### b.      The Union's Response

The Union claims that the fact that there are no genuine issues of material fact in dispute is not dispositive—the Union argues that, in this case, there is a legal rather than a factual dispute.  The Union alleges that the legal dispute concerns the applicability of one of the exceptions to the exhaustion requirement, which requires the plaintiff to prove that the Union has sole power under the contract to invoke the higher stages of the grievance procedure and that Schwebach was wrongfully prevented from exhausting the contractual remedies in violation of the duty of fair representation.  Doc. No. 17-2 (citing *Vaca v. Sipes*, 386 U.S. 171, 185 (1967)).  According to the Union, the court cannot consider whether it wrongfully prevented Schwebach from exhausting the contractual remedies, in violation of the Union's duty of fair representation, because such a finding would "invoke issue preclusion, barring Mr. Schwebach's claim against the Union."  Doc. No. 17-2.  The Union further argues that "the question of whether or not the Union wrongfully refused to process Mr. Schwebach's grievance is not properly before the court in this motion, and cannot be addressed."  *Id.*

### c.      The Employer's Reply to the Union's Response

The Employer claims, in its reply, that the Union's duty of fair representation is immaterial.  Instead, the Employer alleges that the Union is attempting to waive the exhaustion requirement on behalf of Schwebach and that there is no such exception to the exhaustion requirement.  The Employer also argues that it should not be bound by the Union's decision to investigate a grievance when there was not a proper request, under Article 16 of the CBA, to investigate.

### d.      Schwebach's Response

Schwebach, first, claims that he did exhaust the contractual grievance remedies.  In arguing that he exhausted his contractual remedies, Schwebach alleges that there is

an informal "mini-version" of the grievance procedure, where a Union officer or member meets with an OC Generalist to resolve a complaint. Schwebach asserts that he followed this "mini-version" of the grievance procedure and therefore exhausted his grievance remedies. In the alternative, Schwebach claims that his contractual remedies were exhausted when, after he informed the Union of his termination and discussed investigating the termination, it voted not to pursue his claim. Schwebach argues that he had pursued his contractual remedies as far as the contract allowed him, when the Union refused to pursue his claim any further, and therefore he had exhausted the contractual remedies.

Schwebach's second argument is that, even if the court finds that he failed to exhaust his contractual remedies, the failure should be excused as futile. Schwebach alleges that filing a written request would have been perfunctory, because the Union had already decided not to pursue his claim. Schwebach does not cite any authority in relation to his futility arguments, however.

Schwebach, lastly, argues that if the court finds that he failed to exhaust his remedies under the CBA, the failure should be excused under an exception to the exhaustion requirement. Schwebach identifies, as did the Union, the United States Supreme Court's exception in *Vaca*.[7] Schwebach, however, argues that the exception should be applied in this summary judgment motion and that application of the second

---

[7] Under *Vaca* and progeny, an employee must prove two prongs. First, the employee must prove that the union had "control of the grievance and arbitration system." *Breininger v. Sheet Metal Workers Intern. Ass'n Local Union No. 6*, 493 U.S. 67, 80 (1989). Second, the employee must prove that the union "wrongfully refused to process [the plaintiff-employee's] claim and thus breached [the union's] duty of fair representation." *Id.*

prong of the exception, requiring him to prove that the Union violated its duty of fair representation, presents a genuine issue of material fact.

### e.    The Employer's Reply to Schwebach's Response

In response to Schwebach's arguments, the Employer first states that there is no separate "mini-version" of the grievance procedure.  Instead, the alleged "mini-version" is actually the preliminary stages of the Article 16 formal dispute procedure.

The Employer also claims that Schwebach does not cite any authority for the futility exception and misunderstands the ordinary application of the exception—the Employer claims that the futility exception is ordinarily applied to a plaintiff's failure to exhaust internal union remedies.  The Employer also argues that the futility exception applicable to employer remedies is not applicable here.  First, the Employer claims that a plaintiff must show that the union is hostile or prejudiced toward him, in order to excuse his duty to exhaust.  Second, the Employer claims that the grievance mechanism at issue here was readily available and easily implemented, and as a result, Schwebach should have used it unless there was evidence that the Union would act in bad faith in responding to such an attempt.

Lastly, the Employer argues that Schwebach's allegation that there is a genuine issue of material fact concerning whether the Union breached its duty of fair representation is unfounded.  The Employer recognizes that Schwebach alleges failings of the Union as grounds for his claim of breach.  However, the Employer notes that the allegations are only supported by Schwebach's complaint and, therefore, are insufficient to generate a genuine issue of material fact.

## 2.     *Analysis of the Exhaustion Requirement*

In *Republic Steel Corp. v. Maddox*, the United States Supreme Court explained the general exhaustion requirement referred to by the parties,[8] which is that "employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965).  Since *Republic Steel Corp.* was decided, the courts have repeatedly recognized the "principle that no action can be brought under 29 U.S.C. § 185(a) until a party attempts to exhaust his contractual remedies as to any claim." *Petersen v. Rath Packing Co.*, 461 F.2d 312, 315 (8th Cir. 1972) (*citing Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965); *Woody v. Sterling Aluminum Products, Inc.*, 365 F.2d 448 (8 Cir. 1966), cert. denied, 386 U.S. 957 (1967)).  "The purpose of the exhaustion requirement is to utilize the contract grievance procedure in the collective bargaining contract as an initial method of settling disputes." *Id.*  The Eight Circuit Court of Appeals, applying *Republic Steel*, has stated that in actions brought under 29 U.S.C. § 185 "certain prerequisites [must be] met, such as seeking use of established grievance machinery and affording the Union a chance to act on their behalf." *Brown v. Sterling Aluminum Products Corp.*, 365 F.2d 651, 656 -657 (8th Cir. 1966).

In this case, Article 16 of the CBA outlines the grievance procedure that the Employer alleges Schwebach failed to exhaust.  Article 16 contains three main sections

---

[8]     As the parties recognize, the United States Supreme Court has recognized exceptions to this general requirement: one exception requires the plaintiff to show both that the union had sole control over the grievance process and that the union breached its duty of fair representation, *see Vaca v. Sipes*, 386 U.S. 171, 186 (1967), and the other requires a showing that exhaustion would have been futile. *See Glover v. St. Louis-San Francisco Railway*, 393 U.S. 324 (1969).

18

that describe the agreed upon progression of an employee complaint. First, Section A explains that "[w]hen employees have complaints, an earnest effort shall be made to settle them through discussions with their immediate Supervisor..." Doc. No. 15-4, p. 29. In the second section, labeled "Unresolved Complaint," the CBA states that "[i]f the complaint is not settled by the immediate supervisor's verbal response, the complaining employee may ask the [Union] to process the complaint as a formal dispute under Step 1 of this Article 16." *Id.* The CBA then explains the formal procedures that must be taken to prompt the Union to consider the complaint as a formal dispute. Specifically, this section states that:

> Employees who wish to appeal their complaint must provide the [Union] Vice President assigned to the employee's plant or department with a write up of the complaint, on an approved form, within (5) working days after their receipt of a verbal answer. This written dispute becomes property of the [Union].

*Id.* The third section, labeled "Formal Dispute," explains the sequence of events that will be applied to handle disputes that the Union has deemed a formal dispute.

Schwebach admits that he failed to provide the Union with a write up of his complaint, as provided for in the "Unresolved Complaint" section. Instead, he alleges that he informed the Union "that he had been terminated and provided [the Union] with details and names to begin an investigation." Doc. No. 19-3, ¶ 11. Even though Schwebach did not follow the procedures in Article 16 to prompt the Union to consider his termination as a formal dispute, the Union handled Schwebach's complaint as if it were a formal dispute,[9] and it decided not to pursue his grievance. It is undisputed that

---

[9] The Union stated in an interrogatory response, that "the [Union] did an
(continued...)

"[t]here was no alternative method, under the [Union's] by-laws, by which Schwebach could have appealed the decision by the officers." Doc. No. 19-3, ¶ 17; Doc. No. 21-2, ¶ 17.

The Employer argues that, in order to exhaust his claim, Schwebach needed to file a write up of the complaint, on an approved form, regardless of whether the Union had already voted not to pursue a challenge to Schwebach's termination. However, the court finds that a written request would only serve the purpose of achieving strict compliance with the CBA. First, it would not further the interests of further "utiliz[ing] the contract grievance procedure in the collective bargaining contract as an initial method of settling disputes." *See Petersen*, 461 F.2d at 315. Schwebach had already attempted to utilize the contract grievance procedure when he provided the Union with the information necessary to investigate his complaint. Second, a written request would also be unnecessary to show that Schwebach was "seeking use of established grievance machinery and affording the Union a chance to act on [his] behalf." *See Brown*, 365 F.2d at 657. The Union had been afforded a chance to act on Schwebach's behalf and had informed Schwebach that they had voted not to pursue his complaint. And finally, the court recognizes that the Employer has failed to demonstrate that it was prejudiced by the lack of a write up of Schwebach's complaint, on an approved form.

Once the Union had refused to pursue his claim, Schwebach was left with no other means by which to pursue his complaint under the CBA. For the above reasons,

---

[9](...continued)
investigation as if a formal grievance was requested to be filed." Doc. No. 15-4, p. 63.

the court finds that Schwebach has carried his burden of proving that he exhausted his remedies under Article 16 of the CBA.

### III.  CONCLUSION

The court has not identified a genuine issue of material fact concerning whether Schwebach exhausted his grievance remedies under the CBA.  However, even when no genuine issue of material fact is present, summary judgment is inappropriate unless the governing law supports the moving party's position.  FED. R. CIV. P. 56(c) (requiring the moving party to show that it "is entitled to judgment as a matter of law").  Summary judgment in favor of the Employer is inappropriate in this case because the governing law supports Schwebach's position that he exhausted his remedies under the CBA.

THEREFORE, Defendant Wells Dairy Inc.'s Motion for Summary Judgment and Request for Oral Argument is **denied**.

**IT IS SO ORDERED.**

**DATED** this 25th day of November, 2008.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA